IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action No. 22-110 CFC |
| | ) | |
| JORDAN DONYELL HARMON, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Revised Presentence Investigation Report dated March 26, 2024 (PSR) assesses a guidelines range of 12-18 months incarceration. ¶ 112. The government recommends an upward variance.[1]

**I.     FACTORS UNDER 18 U.S.C. § 3553(a)**

**Nature and Circumstance of the Offenses**

In the six months between April 8, 2020, and September 29, 2020, the defendant, a Dover, Delaware resident, bought 18 handguns. He bought a nineteenth handgun on June 6, 2021. Seven of those handguns have been recovered, all in Delaware, by police.  PSR ¶¶ 29-37.

The .40 caliber semiautomatic pistol the defendant bought on July 21, 2020 was recovered **the next day** in Dover from a five-time felon and the target of a Title III investigation.  A serious offender, he was sentenced in Superior Court to 29 years' incarceration.

The 9mm semiautomatic pistol the defendant bought on April 10, 2020 was used in a Dover shooting **the next day**. This is verified by a NIBIN hit.  On April 11, 2020, Delaware State Police (DSP) responded to Capital Park, Dover, after receiving a shooting complaint. On the street, DSP

---

[1] This Memorandum expressly incorporates Attachment A, which is filed under seal.  The government routinely files such an attachment, even though it may or may not contain additional information.

found twelve 9mm spent shell casings, in separate groupings of nine and three. Neighbors reported seeing three young black males wearing masks get out of a silver vehicle and open fire on a black car as it drove by – classic gang violence. One of the bullets went through the siding of a home with three occupants. Police recovered the bullet from a bedroom. A black Chevy Malibu had eight bullet holes. Its driver explained that she left her nearby home alone to run an arrand when ambushed. DSP processed the 9mm spent shell casings in NIBIN. A year later, in May of 2021, DSP recovered from a 23-year-old felon the 9mm semiautomatic pistol the defendant bought on April 10, 2020. DSP test fired the gun, processed the spent shell casing in NIBIN, and got a hit. It matched a shell casings collected from the scene of the above-referenced car shooting. In January of 2022, the 23-year-old felon was sentenced in Superior Court for the possession of the gun to one-year incarceration.

Two months later, this same 23-year-old felon was sentenced to three years incarceration for a different gun, a 40 caliber Glock, which was used to shoot up a house, also in Capital Park, Dover – more classic gang violence. On April 13, 2021, DSP and Dover P.D. responded to a shooting complaint at the Capital Park residence of a woman in her mid-50s. She explained that she was in her bedroom when she heard gun shots and her bedroom mirror shattered. Police found 31 spent shell casings outside her home. The woman had no explanation for the attack, except to say that her son's girlfriend recently told her that her son may be implicated in a Dover shooting. On April 15, 2021, investigation by the U.S. Marshal Fugitive Task Force resulted in the execution of a search warrant at a Dover residence from which five loaded semiautomatic pistols, including a 40 caliber Glock, were seized. The above-refenced 23-year-old felon admitted to possessing this 40 caliber Glock. Several days later there was a NIBIN hit, matching it to the spent shell casings found outside the home of the mid-50s, Capital Park resident whose house was shot up. (During the defendant's

post-arrest interview, investigators referenced this 23-year-old felon by name and ask the defendant if he knew him.   The defendant responded that he did not know him but knew of him.)

The 9mm semiautomatic pistol the defendant bought on September 2, 2020, was recovered from a different 23-year-old felon on probation for Rape 4th degree (the Probationer).   On May 3, 2021, eight months after the defendant bought the gun, DSP responded to a Harrington, Delaware home where residents reported their house had been shot up – more classic gang violence.   DSP found bullet holes in the house and 20 spent shell casings, a mix of 9mm and 40 caliber.   A neighbor's security camera depicted four men fleeing the scene in a BMW.   That same night, police and State Probation Officers traced the BMV's license plate number to the Probationer's Bridgeville, Delaware home and recovered three loaded handguns, including the 9mm semiautomatic pistol the defendant bought on September 2, 2020.   The Probationer was sentenced to two years' incarceration.

The .40 caliber semiautomatic pistol the defendant bought on June 1, 2021, was recovered just two months later by Dover P.D. from an apartment in Dover's Whatcoat Village Apartment Complex, the scene of two recent shootings.   Of the apartment's five occupants (four were juveniles), three were charged in the recent shootings and each was lawfully prohibited from possessing a firearm.   One of the juveniles jumped out of the apartment's second floor window before being apprehended.

The 9mm semiautomatic pistol the defendant bought on July 19, 2020, was recovered with nine live rounds in the magazine, on December 13, 2023, by Wilmington P.D. from yet another probationer.   The young male was on probation for carrying a concealed deadly weapon.

The 9mm semiautomatic pistol the defendant bought on April 29, 2020, was recovered less than four months later from a 20-year-old male who fled from Wilmington P.D. officers during a traffic stop. When apprehended, he had in his pocket the 9mm pistol with one round in the chamber

3

and nine more rounds in its extended magazine. He was sentenced in Superior Court to one year incarceration.

Finally, the 9mm semiautomatic pistol the defendant bought on April 10, 2020, was recovered on February 24, 2022, by the Dover P.D. after a man used it in an aggravated menacing of his girlfriend.

**History and Characteristics of the Defendant**

*The Pretrial Services Report*

The defendant's Pretrial Services Report, prepared for his detention hearing in October 2022, informs on his amenability to supervision.  In his bail interview, the defendant told the USPO that he was prescribed medical marijuana for Post-Traumatic Stress Disorder.  (Apparently, he expected to be released on bail with a no drug use condition.)  The USPO's DELJIS inquiry proved the claim to be entirely false.  And the defendant has no mental health history, PTSD or otherwise.

The USPO interviewed with the State Probation Officer (SPO) who then was supervising the defendant.  The SPO advised that the defendant had been inconsistent with reporting as directed.  Further, the SPO had concerns that the defendant was not residing at his mother's residence, as required.  The SPO increased supervision from Level 2 (monthly meetings) to Level 3 intensive supervision (including weekly meetings).

The Pretrial Services Report showed 13 Failures to Appear.

The defendant told the USPO that he was a Polytech High School graduate and contributed $800 per month to his mother towards rent and utilities. His mother later told the USPO that her son was a "dropout" in 10th or 11th grade and that he contributed nothing toward her residential bills.

*Gang Member*

The defendant is a proud gang member. He is depicted on social media flashing gang hand signs.  He has a gang tattoo and exchanged gang greetings in text messages on his phone.  See gang

4

related photos attached as Exhibits to D.I. 20-1, 2, 3. Government's Response to Defendant's Motion to Revoke Detention Order.

## II.  THE NEED FOR AN UPWARD VARIANCE

Here, the guidelines do not adequately represent and capture the defendant's trafficking of firearms. This is not a case in which some of the defendant's guns merely were recovered from felons. The seven recovered semiautomatic pistols have been a scourge on Dover P.D, the DSP, and the communities they protect.

The Capital Park, Dover ambush and car shooting occurred the day after the defendant bought the 9mm pistol used in that shooting. In his post-arrest interview, the defendant could not account for the location of any of his 19 semiautomatic pistols but he denied selling them or giving them away (with the exception of the gun he admittedly gave to Roderick Dixon). Accordingly, a reasonable inference can be drawn that the defendant was one of the three shooters. For this reason alone an upward variance is warranted. If he knowingly facilitated the shooting with a straw purchase, again the variance is warranted. If he otherwise transferred that gun with a willful blindness or complete disregard to the consequences, still a variance is warranted. And this was not the defendant's only gun used to commit a crime.

Another of the defendant's guns was used to shoot up a house in Harrington. Another gun was used in an aggravated menacing. These are most serious crimes.

And the seven guns were covered from serious offenders: a five-time felon and Title III target; and a 23-year-old felon sentenced to three years incarceration for a different gun, used in Dover to similarly shoot up a house; two probationers; and juveniles charged with shootings. Police officers were inherently endangered by the defendant's guns, one of which was in the pocket of a fleeing but apprehended felon, loaded with an extended magazine.

In summary, the defendant did more than traffic in firearms: he facilitated what is obvious gang violence. A significant sentence is necessary to adequately punish this extensive and long-term conduct. A significant sentence is necessary to serve as a deterrent to those in the Dover area who would straw purchase guns or use them to commit crimes.

        Respectfully submitted,

        DAVID C. WEISS
        United States Attorney

By:    */s/ Edmond Falgowski*
        Edmond Falgowski
        Assistant United States Attorney

Dated: March 29, 2024